## S11F0864. SPURLIN v. SPURLIN.
(716 SE2d 209)

CARLEY, Presiding Justice.

Charity Spurlin (Wife) and Terry Spurlin (Husband) were married in 1998 and had two children. In 2007, Wife filed a divorce action, but dismissed it after confessing to an extramarital affair and seeking reconciliation. The parties resumed cohabitation and executed a postnuptial reconciliation agreement which, in contemplation of the possibility of divorce, purported to settle preemptively any future issues between the parties involving child custody, child support, alimony, and property division. That agreement provided that Husband would receive the marital residence and primary physical custody of the minor children, with both parties having legal custody. In 2010, Wife again filed a complaint for divorce. Husband answered and also filed a motion to enforce the postnuptial agreement. After a hearing on that motion, the trial court determined that the agreement was valid and enforceable as to alimony and property division, but that the court retained the duty and authority to make determinations as to child custody and child support.

After a bench trial, the trial court entered a final divorce decree, wherein it ratified the postnuptial agreement pursuant to OCGA § 19-9-5 (b), finding that joint legal custody and primary physical custody in Husband was in the best interests of the children at the time the agreement was signed and that it is still in their best interests. In a separate paragraph, the trial court also determined that under OCGA § 19-9-3 (a) (3) (A)-(Q) the award of primary physical custody to Husband is in the children's best interests and supported this determination with several specific findings. The trial court subsequently noted that Wife acknowledged that her move from the marital residence with the children at separation was the only change in circumstances since the signing of the postnuptial agreement, and the court further stated that she "did not present any persuasive evidence that it would not be in the best interests of the minor children to ratify the post-nuptial agreement of 2007 as required under OCGA § 19-9-5 (b)." The property awards in the final judgment, including the marital residence, were also consistent with the postnuptial agreement. Wife applied for a discretionary appeal, which was granted pursuant to our Pilot Project in divorce cases.

1. Wife concedes that she declined to participate in and pay for the court reporter's takedown and, thus, no transcript either of the hearing on the motion to enforce or of the trial is available. See

*Austell Healthcare v. Scott,* 308 Ga. App. 393 (1) (707 SE2d 599) (2011); *Giffen v. Burrell,* 176 Ga. App. 278, 280 (335 SE2d 616) (1985) (On Motion For Rehearing). Where, as here, " '(t)he evidence has not been brought to this court by any of the methods provided in (OCGA § 5-6-41, there) is no evidence before this court( and) the judgment of the trial court (on evidentiary matters) cannot be reviewed.' [Cits.]" *Holmes v. Roberson-Holmes,* 287 Ga. 358, 360 (1) (695 SE2d 586) (2010). See also *Blue v. Blue,* 279 Ga. 550 (615 SE2d 540) (2005). However, the required assumption that an adequate evidentiary basis exists for the trial court's orders does not automatically require affirmance, as we still must analyze how the law applies to the trial court's findings of fact. See *Sapp v. Canal Ins. Co.,* 288 Ga. 681, 686 (3) (706 SE2d 644) (2011).

2. Wife contends that the trial court erred in enforcing the postnuptial agreement when that document shows that Husband failed to comply with the affirmative duty of full and fair disclosure of his financial condition. See *Curry v. Curry,* 260 Ga. 302, 303 (2) (b) (392 SE2d 879) (1990) (same criteria for determining whether to enforce an antenuptial agreement applies to reconciliation agreements); *Scherer v. Scherer,* 249 Ga. 635, 640 (3) (292 SE2d 662) (1982).

In its order on the motion to enforce, the trial court made the following relevant findings:

> [T]estimony showed that [Wife] had access to [Husband's] family business financial records up to the point of her filing for the divorce that triggered the agreement that she is challenging. [Wife] keyed the Spurlin family business financial information into a computer for the family. Additionally, [she] handled most or all of [Husband's] paychecks when he received them and then paid the family bills, giving her substantial knowledge of his financial status. . . . [T]he parties had not been separated for any substantial period.

We must assume that these findings were supported by sufficient competent evidence. *Holmes v. Roberson-Holmes,* supra at 361 (1). Furthermore, those findings clearly authorized the trial court to exercise its discretion and conclude that there was full and fair disclosure of Husband's financial condition prior to execution of the postnuptial agreement. *Lawrence v. Lawrence,* 286 Ga. 309, 314 (4) (687 SE2d 421) (2009). See also *Mallen v. Mallen,* 280 Ga. 43, 47 (1) (622 SE2d 812) (2005).

That authority was not altered by the fact that no disclosure statements were attached to the agreement and, moreover, the body of the agreement specifically lists major assets of the parties. See

*Lawrence v. Lawrence,* supra at 313 (4). Similarly, the trial court's authority to find full and fair disclosure from Wife's extensive familiarity with Husband's business dealings and personal financial condition was not altered, but was further supported, by the affirmation in the agreement that each party had "knowingly and voluntarily chosen to forego" formal discovery, investigation, and analysis of the other party's financial condition "and accept the provisions of this agreement on [the] basis of information acquired prior to this date without further such discovery."

3. Wife also contends that the trial court erred in determining that child custody was governed by a postnuptial agreement signed more than two years earlier during the marriage, in relying upon a lack of any evidence from Wife of a change in circumstances since that time, in ratifying that agreement pursuant to OCGA § 19-9-5 (b) even though this statute is applicable only to agreements reached during the pendency of a divorce, and in ignoring the statutory factors for determining custody.

However, as noted above, the trial court separately determined that its award of primary physical custody to Husband is in the children's best interests when this standard is applied with reference to the relevant factors set forth in OCGA § 19-9-3 (a) (3) (A)-(Q). In this analysis, the court did not mention the postnuptial agreement, but supported its determination with several specific findings with respect to Wife's conduct and particularly noted the parties' past performance and relative abilities for future performance of parenting responsibilities. Again, we assume that those findings were supported by sufficient competent evidence. *Holmes v. Roberson-Holmes,* supra. This separate analysis would have been superfluous if the trial court was relying solely on its separate ratification of the postnuptial agreement pursuant to OCGA § 19-9-5 (b). Although non-ratification under that statute requires specific written factual findings that the agreement would not be in the best interests of the child, ratification does not require any affirmative finding that the custodial arrangement in question is in the child's best interests.

Accordingly, we conclude that the trial court did not base its custody decision solely on the postnuptial agreement, but expressly and properly based that decision on its alternative application of the "best interests" standard pursuant to OCGA § 19-9-3. See *LaFont v. Rouviere,* 283 Ga. 60, 62 (2) (656 SE2d 522) (2008). Therefore, pretermitting the postnuptial agreement's relevance and the applicability of OCGA § 19-9-5, we find no abuse of discretion in the trial court's custody award.

*Judgment affirmed. All the Justices concur.*

*Anthony M. Zezima*, for appellant.
*Eric W. Norris*, for appellee.